54 Cal.App.2d 575 (1942)
Estate of ANDREW A. BROWN, Deceased. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), as Administrator with the Will Annexed, etc., et al., Appellants,
v.
PETER TUM SUDEN, as Executor, etc., Respondent.
Civ. No. 12177. 
California Court of Appeals. First Dist., Div. Two. 
Sept. 29, 1942.
 Weinmann, Quayle & Berry, Donald K. Quayle and George G. Olshausen for Appellants.
 Richard tum Suden and Walter K. Olds for Respondent.
 NOURSE, P. J.
 The administrator with the will annexed and several beneficiaries under the will appeal from an order or decree of the probate court directing the administrator to distribute to the executor of the deceased widow of Andrew A. Brown her one-half community interest in the estate, and also directing the administrator to pay to such executor specified amounts in satisfaction of claims in behalf of said widow's estate.
 The facts upon which the order was based are fairly stated by respondent, and no substantial controversy is urged by appellants as to the evidence upon which respondent relies. Andrew A. Brown died testate on October 21, 1925, leaving surviving him his wife, Ada I. Brown, and no children. His estate consisted entirely of community property, and he so declared in his will. After provision was made for certain specific bequests, which are not involved in this controversy, the will bequeathed the residue to his wife in this language: "All the rest and residue of my property of whatever kind and nature, in case my said wife, Ada I. Brown, survives me, I give, bequeath and devise unto my wife, Ada I. Brown, to have, hold, use and enjoy the same with full power to invest and reinvest and to dispose of the same in any manner she may see fit, and to enjoy the rents, issues and profits thereof and so much of the principal thereof as may be necessary for her support and maintenance, of which she shall be the exclusive judge, and as to which no account shall be required of her, for and during the term of her natural life, free from the control of all courts or other residuary legatees whatsoever."
 Provision was then made that if his wife survive him, the residue at her death of his one-half of the community property was to be placed in trust for the benefit of certain named nephews and nieces and of a sister of the testator. All of these nephews and nieces, and the heirs of said sister, since deceased, are the beneficiaries who join in the appeal.
 The will of Andrew A. Brown was admitted to probate *578 in November, 1925, and Joseph C. Atwood qualified as executor. He remained in that capacity until his death in 1937, when the Bank of America, one of the appellants herein, was appointed administrator with the will annexed. Mrs. Brown died testate in 1935, and the respondent herein qualified as executor under her will.
 During the course of his administration, Atwood caused an inventory and appraisement to be made and filed showing a gross estate of over $200,000. He filed in due order his first four accounts and reports, all of which were duly settled, allowed, and approved. His fifth account and report was filed on September 11, 1935. Before it was settled one of the beneficiaries intervened to reopen and examine the four previous accounts contending that he had been a minor when these four accounts were settled and had not reached his majority until April, 1935. The probate court having denied him this privilege, he appealed to this court, and the order was reversed. (Estate of Brown, 24 Cal.App.2d 573 [75 P.2d 658].) However, the record does not disclose that he proceeded further in reference to the first four accounts, but it does appear that he joined with all the other appellants herein at the time of the settlement of the fifth and sixth accounts in expressly withdrawing all objections to the fifth and sixth accounts; and these were duly settled and approved on September 27, 1938, without opposition of any of the parties to this appeal. On December 1st following, the order of settlement was amended to show that objections had been made to one item of $1,873, and this item was withdrawn from the settlement.
 In March, 1938, the petition which is the subject of this appeal was filed, a demurrer thereto was overruled, issue was joined by answer, and the matter was submitted in January, 1940, after hearing in open court. In January, 1941, the order and decree appealed from was entered. In all these proceedings in opposition to the petition the administrator alone appeared, but after the order was made his counsel joined the beneficiaries under the will with the administrator as appellants.
 There are eight grounds for reversal stated by appellants, the first three of which relate to the same question of the sufficiency of the petition. The respondent makes his own statement of nine questions involved--some of which are the same as those noted by appellants. We will first consider the questions stated by the appellants, but we will not discuss the *579 special grounds raised by respondent that neither the administrator nor the beneficiaries have the legal capacity to prosecute this appeal because of circumstances arising in the probate court. We will assume that the appeal has been taken by the proper parties because the long delay in the settlement of the estate calls for an early decision of the controversy upon the merits.
 [1] It is argued that the petition did not fulfill the statutory requirements for a petition for partial distribution, a petition to pay debts, or a petition for instructions. The respondent, while contending that the petition was sufficient, argues that the administrator waived the point by answering and contesting on the merits, and by stipulating to a submission upon the record. Briefly, appellants' arguments are that as a petition for partial distribution, the pleading is defective because it fails to allege the condition of the estate as to general indebtedness as required by sections 1000 and 1001 of the Probate Code; that, as a petition for an order to pay debts, it is defective because it was not brought to hearing at the time of the settlement of any account, as required by section 952 of the Probate Code; that, as a petition for instructions, it is defective because it was not filed by the administrator, as required by section 588 of the Probate Code. But the petition cannot be classed under any one of these three heads. It sought distribution of one-half of the remaining assets of the estate--not as an heir, devisee, legatee or other interested party mentioned in section 1000 of the code, but as the surviving widow asserting her one-half community share. This share belonged to the widow upon the death of the husband under the provisions of section 201 of the code, and did not come to her as an heir, devisee or legatee. Ownership of the community share having attached at the time of the death of the husband her right to seek clear title and possession arose from these sections of the code. But, if we should assume otherwise, section 1001 provides that if it appears, at the hearing, that the estate is but little indebted the petition may be granted. The form and substance of the petition is not stated in the section.
 [2] In addition to the prayer that this interest be set aside to the executor of the deceased widow, the petition sought payment of the remaining portion of the family allowance and of certain sums advanced by the widow from her separate estate and from the proceeds of insurance policies, these sums having been voluntarily contributed by her to pay legacies and to meet the indebtedness and costs of administration of her husband's *580 estate. There is nothing indefinite or uncertain about these allegations, but appellants say it must be filed with and brought to hearing at the time of hearing or settlement of an account. But section 952 of the code which they cite does not support the point. That section provides that "Upon the settlement of any account ... the court shall order the payment of the debts. ..." It is manifest that the section does not mean that all these things must be done at one time or in one order. The clear purpose of the section is to require the approval and settlement of the account showing the claims allowed and the condition of the estate before an order for payment of any of those claims can be made. There would be no purpose and no reason for requiring that such order be made simultaneously with the approval of the account. But, if the section should be given the narrow interpretation for which appellants contend, it would take something in the nature of an express prohibition to justify a holding that the probate court was without jurisdiction to make an order for payment after the account had been settled as well as at the time of settlement. This would seem to follow from the language of the section that "the court shall order the payment of the debts, as the circumstances of the estate permit."
 The appellants argue (without noting it as one of the questions involved) that the form of the decree is indefinite and uncertain because it does not contain an accurate and definite description of the properties involved. If the administrator should find any difficulty in ascertaining these properties from the petition and the record he is permitted, under section 588 of the Probate Code, to ask for instructions. And this is a simpler and more speedy remedy than that of an appeal. This is the more pertinent since the appellants frankly state that the effect of the decree is to turn over to the respondent the whole of the estate, except the sum of $5,000 to be retained for expenses of administration. If there should be any cloud upon the title which the respondent takes, because of the form of the decree, that would be the concern of the respondent.
 [3] The next question stated relates to the propriety of the portion of the decree which awarded respondent $2,300, being one-half of the unpaid family allowance. The facts relating to this issue are that on November 5, 1925, the probate court granted the widow a family allowance of $600 per month. That during the years of financial depression, specifically from 1932 to 1935, the widow was paid less than the amount granted. Appellants argue that we must presume, or infer, that these *581 reductions were made with the widow's consent, and that she must therefore be deemed to have waived the difference. The trier of the facts might have drawn such inference, but did not do so. The answer to the petition pleaded, on information and belief, that the lesser amounts were accepted by the widow in full satisfaction. But appellants made no proof of their allegation. The trial court could have justly drawn the inference that the parties knew the law that, until the order was duly modified, it retained its force as a judgment and was enforcible like any money judgment, and that the widow's delay in asserting her rights under the order was not a waiver of her right to demand further instalments. (Estate of Nelson, 167 Cal. 321, 325 [139 P. 692].) The appellants conclude their argument by the assertion that "the evidence conclusively shows an executed agreement to accept family allowance less than the amount fixed by the court." They do not direct our attention to any such evidence, and we have not found any, hence, we may assume it is not there.
 [4] The next question stated is whether the trial court erred in directing payment of a note executed between husband and wife and left uncollected for twelve years. The reference to the twelve years in delay of payment is needlessly injected. The note was executed in 1923, the payor deceased in 1925; the note was included in a claim presented to his estate and duly allowed and approved in 1926. It was not paid because during the lifetime of the payee her husband's estate was badly involved and in need of funds, which Mrs. Brown advanced out of her separate estate. The claim of the widow was reported in an addenda to the first account which was duly settled and approved. It was also reported in the sixth account which was settled and approved after the appellants withdrew all objections and stipulated to the settlement. The grounds upon which this portion of the decree is attacked are that the claim was barred by laches, that it has the earmarks of a fictitious transaction, and that the agreement to let it run discharges the liability. There is no question of laches involved since the estate benefited by the delay. If this defense was raised by the demurrer to the petition, as appellants contend, it fell with the trial of the facts which disclosed that the necessary elements of the plea of laches did not exist. The second ground is but a voluntary statement without evidentiary support. The third ground presents a question of fact which is concluded by the decree. *582
 [5] Appellants object to the items totaling over $22,000 which were included in the order representing loans from Ada I. Brown, or her estate, to the Andrew A. Brown estate. It is conceded that the latter estate received for its benefit over $33,000 advanced from Mrs. Brown's separate estate to pay special legacies and obligations of the Andrew A. Brown estate. $11,000 of this sum was used to pay legacies of the Andrew A. Brown estate. This sum was credited to the Ada I. Brown estate in full. Of the remainder, which was used to pay debts, the widow was charged her community share. The appellants indirectly suggest that Mrs. Brown's community interest was not properly charged with one-half of the community debts and they argue at length on the question of law. But the probate court very properly assumed that there was no disagreement on that question and, in each instance, charged the widow's share in the estate with one-half of the community debts. Objections are made to some of the mathematical calculations by which the specific amounts were determined. But these objections were all waived at the time of the settlement of the accounts. It is not contended that the amounts included in the decree are any different than those specified in the accounts of the executor. Whatever objections or exceptions the appellants had to these items were all waived at the time the fifth and sixth accounts were heard for settlement and when respondent asked the court "to make the order approving those six accounts." To this request counsel for appellants replied, "No objection to the accounts." In the order of September 27, 1938, settling the sixth and final account and report of the executor (in which the items now under discussion were expressly included) we find the recital that counsel for these appellants had "upon stipulation in open court, withdrawn their said objections and exceptions to said Sixth and Final Account and Report and consented to the settlement, allowance and approval thereof. ..." The order appealed from having been based upon this consent and agreement, the appellants may not be heard at this time to question the single items of that account and report since no issue was raised in the probate court as to the correctness of the several items when the order and report were settled and approved, and none was raised at the hearing of this petition--other than that the estate of Mrs. Brown was jointly liable for some of these advances, and that they were voluntary contributions made by her or by her estate for her benefit. But there has been no controversy, either in the probate court or on *583 this appeal, over the liability of the widow's community interest for the payment of the debts of the community. This was taken as settled law and the accounts were approved and settled upon that basis. The only debatable question now presented is whether, having stipulated to the settlement of the accounts, the appellants can now attack the separate items of the approved accounts upon the grounds that the loans were voluntary contributions, that they were not made with prior sanction of the probate court, or that they were used to enhance the estate of the lender. This question does not present any difficulties. It has long been the rule that those beneficially interested may stipulate to the settlement of an account and that, when settlement is so made, the order or decree is conclusive and binding upon them. (11b Cal.Jur., p. 610; Grady v. Porter, 53 Cal. 680, 686; Estate of Grant, 131 Cal. 426, 429 [63 P. 731]; Estate of Simonton, 183 Cal. 53, 56 [190 P. 442]; Estate of Wear, 20 Cal.2d 124, 128 [124 P.2d 12].) For these reasons the question of the propriety of the credits allowed and of the liability of the estate on account of the separate items is no longer debatable.
 This rule forecloses discussion as to the propriety of the separate items allowed and settled, as well as to the propriety of the portions of the order appealed from which direct repayment of those items. Though the question is not properly raised under the rules of appellate procedure, it is suggested in the briefs that the order did not take proper consideration of the community liability as to the promissory note payable to the Ada I. Brown estate or as to the item relating to the sale of the Redwood City property. In reference to those items, if we may assume that error occurred, it is apparent that no prejudice resulted to appellants. This is so because the appraised value of the estate for distribution was approximately $66,000; the order appealed from retained the sum of $5,000 for administration expenses; the widow's share was thus approximately $31,000. The claims allowed in the order total more than $41,000. Hence, if the items allowed in full were deducted from the order appealed from and but one-half credited to the widow's estate, it would not make any difference in the result which would be of any benefit to appellants.
 Other points discussed do not require consideration.
 The order and decree is affirmed.
 Sturtevant, J., and Spence, J., concurred.
 A petition for a rehearing was denied October 29, 1942, and the following opinion was then rendered:
 THE COURT
 In their petition for a rehearing the appellants criticize the portion of the opinion relating to non-application of section 1000 of the Probate Code. They say we have misstated the law of inheritance to such extent that a rehearing should be granted and the order reversed. We endeavored to draw a distinction between the language of 201 of the code, which declares that one-half of the community interest "belongs to" the surviving spouse, and the language of that and similar sections which declare that the community interest of the spouse, in absence of testamentary disposition "goes to" the surviving spouse. We expressed the view that the restrictions of section 1000 related to a petition for "distribution" of the estate of the deceased spouse on behalf of an "heir, devisee, or legatee," succeeding as such to the community interest of the deceased spouse, rather than to a petition of the surviving spouse for an assignment to her of her own community interest. But we did not intend to enter the controversy over the status of the surviving wife's interest in community property under the code sections arising out of the amendments of 1923 and 1927. We merely endeavored to emphasize the weakness of the contention that sections 1000 and 1001 should be strictly construed.
 [6] But, if we were in error in this view of the law, we are unable to perceive how it is material to the decision. The settled rule is that when a party refuses to stand upon his demurrer, but goes to trial where the alleged deficiencies of the petition are cured by the proof, he will not be permitted to attack the pleading, unless he has been deceived, or prejudiced thereby. (21 Cal.Jur. p. 273.) Here the appellants not only waived whatever defects may have been asserted in the petition by reason of sections 1000 and 1001 of the code, but they aided in the proof of those facts by their stipulation.
 The petition for rehearing is denied.