MARIO MERCADO RIERA, Accountant and Appellant-Appellee, *v.* ADRIÁN MERCADO RIERA ET AL., Respondents and Appellees-Appellants.

No. 8911. Argued November 4, 1916.—Decided January 14, 1947.

*Francisco Parra Capó* and *Pedro M. Porrata* for appellant-appellee.. *José A. Poventud, Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for respondents and appellees-appellants.

ON MOTION FOR RECONSIDERATION

MR. JUSTICE DE JESÚS delivered the opinion of the court.

By an order of July 24, 1946, as amended two days later, this court vacated its judgment of May 8, last in order to hear the parties solely on the following questions: (*a*) Did this court err in granting compensation to the executor? and (*b*) Should the gift given by the heirs of Mario Mercado Montalvo to the minor Adrián V. Mercado Jiménez be delivered to the minor's father?

I

Under § 908 of the Spanish Civil Code in force in Puerto Rico until 1902, when the Revised Civil Code was approved, the office of executor was gratuitous. This Section was brought to our Revised Civil Code and it is obvious that until March 9, 1905, when the Special Legal Proceedings Law was approved that was the rule in this jurisdiction. But § 53 of said Law, taken from § 1618 [1] of the California Code of Civil Procedure, without expressly repealing § 882 of the Revised Civil Code, which is § 830 of the Civil Code (1930 ed.) and is the same as § 908 of the Spanish Civil Code, for the first time fixed compensation in this jurisdiction to the

---

[1] Since 1931 this Section became a part of the Probate Code of the State of California under §§ 901, 902, and 903.

executor. Said § 53, which in our Code of Civil Procedure is numbered 586, reads thus:

"Section 586.—Each administrator and executor, unless the will under which he is appointed provides to the contrary, shall be entitled to be paid from the estate, as compensation for his services, five per centum on sums received in the course of administration, amounting to one thousand dollars or under; two and one-half per centum on sums up to ten thousand dollars, and one per centum on sums above ten thousand dollars. The judge shall also allow an administrator or executor the necessary and proper expenses incurred in administration, including cost of advertising and publishing notices required by law, maintenance and care of the property, legal counsel and traveling expenses."

The conflict betwen § 830 of the Civil Code, which provides that the office of executor is gratuitous, and § 586 of the Code of Civil Procedure which fixes *to every executor* a compensation equal to that granted to every judicial administrator, is apparent. However, the heirs, María Luisa and Adrián Mercado Riera, who object to the approval of the executor's account, and who shall hereinafter be known as "the protestants" strive to harmonize the two conflicting Sections. They urge that the executor may have power to administer or may be a mere executor, it all depending upon whether the testator granted him powers to administer the estate.[2] Under this theory, "the protestants" urge that the executor contemplated by § 586 is the executor with powers to administer and not the mere executor to whom the testator, as in the instant case, granted no powers of administration. On the other hand, the former executor maintains that the powers granted to the executor by the Civil Code when the testator has not expressly fixed them, are meagre and that this circumstance is the reason why the Civil Code provides no compensation for said office. He then argues that the Code of Civil Procedure considerably in-

---

[2] Section 823 of the Civil Code provides:

"Executors of wills shall have all the powers expressly conferred upon them by the testator and which are not contrary to law."

creased the powers of the executor, making them in many cases equal to those of the administrator,[3] and on that account his compensation was equalled to the latter's.

Concededly the Code of Civil Procedure has considerably increased the executor's powers by imposing on him certain duties which he did not have under the Civil Code and has increased his responsibilities to such an extent that it would be unfair to deprive him of compensation. Hence, our Legislature, in approving § 586 of the Code of Civil Procedure, which amounts with slight variations, to § 1618 of the Code of Civil Procedure of California, granted the same compensation to the executor and the administrator except when the testator provided that the executor's office be gratuitous or when he fixed a compensation different from that prescribed by law. The "protestants" rest their proposition on the fact that § 586, upon fixing the compensation of the executor and the administrator, takes into account the income "received in the course of administration" and by the mere use of the word "administration", they claim that it was the legislative intent to compensate every executor who should have powers of administration and to exclude those to whom the testator had not granted such powers. Although in some cases of this court and of the Supreme Court of Spain the executor with powers of administration is mentioned, however, our Code of Civil Procedure does not establish the difference claimed by the protestants between the mere executor and the executor with powers of administration. The Code refers to the executor without any qualifier. If the Legislature, on approving § 586, had intended to establish such a difference, which does not exist in California, it should have been easy for it to say so, simply by calling the executor with a right to compensation executor-administrator.

---

[3] See the following Sections of the Code of Civil Procedure: 568, 584, 587, 593, 598, and 600. See also § 372 of the Political Code.

We should keep in mind that § 586 contemplates both the administrator and the executor and for that reason uses a single word when referring to the powers of both offices, the executor and the administrator. And it is not strange that the word "administrator" be used in connection with the functions of the executor because Escriche on dealing with the "executor" uses the word *"administrar"* (to administer) when referring to the duties of the executor and to that effect he states: "Ever since Law 1, Tit. 12, B. 10 of the *Nov. Recopilación,* executors are forbidden to buy property of the estate *'que administren'* (which they administer);..." (Italics ours.) This law of the *Novísima Recopilación* also uses the word *"administrar"* (to administer) in connection with the executor's functions. And if we look over § 586 in the light of other Sections of the Code of Civil Procedure which deal with the same matter, we shall readily see that the legislator was justified in using the word *"administrar"* (administer). The executor, under the Code of Civil Procedure, is not a mere custodian of the estate. Section 593, for example, imposes on him the duty to pay the legitimate debts of the deceased with the intervention of the heirs, or in default thereof, with that of the district court. Section 587 imposes on him the duty of receiving the amounts due to the estate and requires the filing of quarterly accounts of the amounts received and disbursed by him. Section 588 provides that the executor, when the estate be liquidated, or when for any reason he ceases in office, should file in court a final account verified by him, attaching the corresponding receipts and vouchers. Finally, § 590 provides that the district court shall make a final order either approving the account as rendered or modifying it. May it be denied that such duties of the executor do not constitute powers of administration?

This point was not decided in *Mercado* v. *District Court,* 62 P.R.R. 350. The question then decided was that the estate

was not under judicial administration since no judicial administrator had ever been appointed nor had the testator conferred powers of administration on the executor; that Mario Mercado Riera was a mere executor and that the testator not having fixed the term of his executorship, his office lapsed one year after he qualified (§ 826 of the Civil Code); that although the testator extended the legal term, since he failed to expressly fix the time of the extension, it should be understood that the term was extended for one year (§ 827 of the Civil Code); that since more than two years elapsed since the executorship was accepted, his office had terminated and consequently the ex-executor was bound to deliver the estate to the heirs in order that the latter should execute the will of the testator regarding any particular where the executor had failed to act. It is true that in *Mercado* v. *District Court, supra,* after citing earlier cases, it was stated that the executor had no other powers than those provided by §§ 823 and 824 of the Civil Code. But this statement ignores the provisions of the Code of Civil Procedure, which, as we have pointed out, increase the powers granted to the executors by the Civil Code. It was also stated in *Mercado* v. *District Court, supra,* that in the absence of any new statute it cannot be maintained that the substantive provisions of our Civil Code regarding the appointment and duties of the executor and the term of the executorship may be considered as changed or modified as to their scope as substantive law by the procedural provisions of the Special Legal Proceedings Law. To this effect we must keep in mind the provisions of § 619 of the Code of Civil Procedure (§ 85 of the Special Legal Proceedings Law), which reads as follows:

"This Act shall take effect from and after its passage, and *all previous laws in conflict herewith are hereby repealed;* but the special proceedings established in the Civil Code, in the mortgage law and its regulations, and in any other law, in so far as not provided for by this Act, remain in force." (Italics ours.)

■■ We know of no constitutional provision which precludes the Legislature from enlarging or changing by an adjective law the provisions contained in the Civil Code on the same matter, and there is no legal reason whatsoever which precludes the repeal of a provision of the Civil Code by a subsequent procedural law. Since § 586 of the Code of Civil Procedure was approved after § 882 of the Revised Civil Code, said Section was partially repealed insofar as it establishes that the office of executor is gratuitous. And since the testator failed to make any provision as to the executor's compensation, the latter is entitled to the compensation provided by § 586 of the Code of Civil Procedure.

■ Lastly "the protestants" argue that the executor is not entitled to any compensation when he has been negligent in the discharge of his office.

We have found nothing in our statutes which imposes such penalty on the executor who is negligent in the custody and administration of the estate. On the contrary, the Supreme Court of California has repeatedly held that although an executor or management is responsible for the losses suffered by the estate through his fault or neglect, or because he improperly managed or misappropriated funds of the estate, such conduct does not deprive him of the statutory compensation. In such cases he should be charged with the losses which should be deducted from his compensation, and insofar as necessary, his compensation shall be applied to the payment of losses. *In re Roberts' Estate,* 162 P. (2d) 461 (Cal. 1945); *In re Savers' Estate,* 265 Pac. 924 (Cal. 1928) and *In re Carver's Estate,* 55 Pac. 770 (Cal. 1898).

For the reasons stated the reconsideration sought as to that part of our judgment which granted compensation to the executor shall be denied.

## II

■■ Don Mario Mercado Montalvo left in his will several legacies for $10,000 to each one of the children of his

daughter María Luisa Mercado de Belaval, to the children of his son Mario Mercado Riera, and to the children of his grandson Pastor Mercado Mandry. He provided that these legacies shall bear interest at 7 per cent annually upon the expiration of 90 days after his death and that one-fourth of each legacy shall be payable from the money he should have in banks and the remainder shall be payable within a term of four years in installments of one-fourth yearly. As to the payment of these legacies he further provided:

"I appoint don Mario Mercado Riera *tutor* of all the persons to whom I have heretofore bequeathed legacies, and who are included among those subject to tutorship, *and only for the purpose of the administration of said legacies.*" (Italics ours.)

After the testator's death his great-grandson Adrián V. Mercado Jiménez was born. Since the testator did not leave the latter any legacy, the four heirs agreed in the partition contract to include in the inventory a gift of $10,000 for the child to be charged against the estate, subject to the same conditions pertaining to the legacies made in favor of the grandchildren and great-grandchildren. In the executor's final accounts under the title "payments made to the legatees of the installments due with interest accrued" the following item was included: "To Adrián V. Mercado Jiménez, $3,550." This amount appears as having been paid to Mario Mercado Riera for the first installment with interest on the $10,000 donated. "The protestants" prayed the lower court that the ex-executor be .directed to deliver this amount to the father with *patria potestas* over the minor. The court *a quo* refused to decide the question because in its opinion it was not proper to consider it in a proceeding for the approval of the executor's final accounts. On appeal this court decided it against "the protestants". On motion for reconsideration and after having heard the parties, we shall proceed to determine whether or not our decision was erroneous.

"The protestants" allege that the testamentary disposition which designates Mario Mercado Riera guardian of the minor grandchildren and great-grandchildren of the testator for the sole purpose of the administration of said legacies of $10,000, is contrary to law. In support of this theory they urge that the *patria potestas* exclude the tutorship and that in the presence of the former the latter cannot validly stand, and cite *Concepción* v. *Latoni*, 51 P.R.R. 547.

"The protestants," assuming that the condition contained in the will relative to the appointment of the tutor for the grandchildren and great-grandchildren is null and void, allege that the condition established in the partition contract whereby Mario Mercado Riera is entrusted with the administration of the gift made to Adrián V. Mercado Jiménez is likewise void. Accordingly, they claim that the $3,550 must be paid to Adrián Mercado Riera, father with *patria potestas* over the minor.

If we were to decide the controversy under the Spanish Civil Code in force in this jurisdiction until the approval of the Revised Civil Code in 1902, perhaps, we might agree with "the protestants" that the condition in controversy is contrary to law. The Spanish Civil Code provides in its § 206:[4]

"The father may appoint a guardian . . . for his minor children or for incapacitated children of age . . .

"The mother has similar powers, . . .

"*No person subject to the parental authority* of another may hold the office of guardian . . ." (Italics ours.)

And § 207 provides:

"Any person who leaves an inheritance or an important legacy to a minor or an incapacitated person may appoint a guardian for such person. Such appointment, however, shall not be effective until the family council has determined to accept the inheritance or the legacy."

---

[4] Copied from the translation of the Spanish Civil Code by F. C. Fisher (1918 ed.).

Reading § 207 in the light of the last paragraph of § 206 which provides that "no person subject to the parental authority of another may hold the office of guardian or pro-tutor," the commentators of the Spanish Civil Code are of the opinion that the appointment of a guardian for the administration of an inheritance or the important legacy contemplated by § 207 copied above, does not lie where the minor (or incapacitated person) has a father or mother with *patria potestas*. 2 *De Diego, Institución de Derecho Civil Español*, page 604; 2 *Scaevola, Código Civil*, page 181; and 4 *Valverde, Tratado de Derecho Civil Español*, page 552. Although Manresa is of the opinion that pursuant to the last paragraph of § 206 of the Spanish Civil Code, a guardian may not be appointed when there is a father or mother with *patria potestas*, adopting an eclectic construction he finds no legal impediment whatsoever which may bar a person from entrusting another with the administration of property bequeathed, resting his conclusion on the decision of April 13, 1892 of the *Dirección General de los Registros*. 2 *Manresa, Comentarios al Código Civil Español* (3d ed., 1907), page 193.

But the Revised Civil Code did not adopt in full §§ 206 and 207 of the Spanish Code. These Sections correspond, with slight changes, to §§ 244 and 245 of the Revised Code, which are equivalent to §§ 174 and 175 of the 1930 edition. They provide as follows:

"Section 174.—The father or the mother may appoint a tutor in his will for his minor children and those of age who are incapacitated."

"Section 175.—Any person leaving an inheritance or legacy of importance to minors or incapacitated persons may appoint a tutor for the administration of such property. Such appointment shall not hold, however, until the inheritance or legacy shall have been accepted by the father, the mother, or the tutor of the minor, with the approval of the proper district court."

It is worthy of note that § 174 does not contain the last paragraph of § 206 of the Spanish Code previously men-

tioned. And to make more obvious the rule of the Civil Code of Puerto Rico, § 175 provided: "Such appointment [of the tutor] shall not hold however until the inheritance or legacy *shall have been accepted by the father, the mother, or the tutor* . . .". (Italics ours.) It is evident that if the inheritance or the legacy must be accepted by the father or the mother in order that the appointment of the guardian should be valid, the existence of the *patria potestas* does not exclude the appointment of the guardian contemplated by § 175 of the Civil Code.

We shall presently discuss *Concepción v. Latoni, supra,* on which the attorneys for "the protestants" lay great emphasis. In that case the father of three natural minor children designated them his sole and universal heirs and provided in his will:

"'Making use of the right granted to me by law I hereby select and appoint as tutor of the minors Joaquín, Carmen, and Alberto, my friend Manuel García Lago, of legal age, single, merchant, and resident of this city, relieving him from the giving of a bond and granting him whatever authority may be necessary in law; and although by operation of law the natural mother of the minors, the aforesaid Modesta Concepción Cosme, has the patria potestas over them, in defense of the welfare and education of my children, I have deemed it convenient to make the appointment of tutor just made, for the reason that the said mother has not lived with the children for a long time and has abandoned them and because she is a very ignorant woman, and if she were allowed to assume the administration of the properties that I am leaving to my children, the latter will be subject to all sorts of deprivations and to witness improper acts.' "

The mother with *patria potestas* challenged the testamentary disposition which appointed guardian for her children depriving her of the *patria potestas*. The district court decided that since the legitimate portion of the natural children in that case was one-third of the inheritance, said minors were forced heirs as to one-third of the estate and voluntary heirs as to the remaining two-thirds. And considering the

inheritance of two-thirds of free disposal as an inheritance of importance, the district court reached the conclusion, pursuant to § 175 of the Civil Code, that the appointment of the guardian should be confined to the administration of two-thirds of the inheritance, the natural mother retaining the *patria potestas* and the administration of one-third of the forced inheritance.

This court reversed the decision of the district court. The reversal is predicated upon § 174 and others of the Civil Code which deal with a different aspect of the question of *patria potestas*. Although it was kept in mind that the last paragraph of § 206 of the Spanish Civil Code had not been included in our § 174, yet § 175 of our Civil Code hereinbefore discussed was ignored. It is unquestionable that the father in the case of *Concepción* v. *Latoni, supra,* could not impose any condition on the legitimate portion belonging to his children, that is, on the one-third which constituted the forced inheritance. But it is no less true that as to the voluntary inheritance—the two-thirds of free disposal—he could impose whatever conditions he deemed fit, provided they were not contrary to law, morals, or public order. And if a person who leaves an inheritance or a legacy of importance to a minor or incapacitated person may appoint a guardian for the administration of the property, on what legal grounds could the father or the mother be precluded from doing the same where the inheritance or the legacy is not included in the legitimate portion which belongs to the minor or incapacitated person? We have no doubt that the district court correctly construed and complied with, in so far as legally feasible, the testator's intent without impairing the rights of the natural mother, who retained the *patria potestas* and custody over the minor and the administration and usufruct of the property which constituted the forced inheritance. In our opinion, the district court acted in consonance with the law and the reversal by this court was erroneous. Con-

sequently, the case of *Concepción* v. *Latoni, supra,* is hereby overruled as to the point under consideration.

 "The protestants" further contend that the tutorship conferred on Mario Mercado Riera was not recorded in the Registry of Tutorships and consequently he can not be a tutor by express prohibition of § 195 of the Civil Code, which insofar as pertinent provides:

"The following cannot be tutors:

"* * * * * * *

"10. A testamentary tutor who neglects or abandons the fulfillment of the requirements indispensable for beginning in the exercise of tutorship."

The fact that the tutorship conferred on Mario Mercado in his father's will was not recorded in the Registry of Tutorships could perhaps be properly raised within a proceeding to deprive said tutor of the administration of the legacies made to the grandchildren and great-grandchildren of the testator. But this question is not now before us and consequently we shall not render any opinion on the matter. The fact that the tutor failed to comply with the requirements before beginning to exercise the tutorship does not mean that the testamentary disposition whereby he was entrusted with such office for the sole administration of the legacies, is contrary to law, morals, or public order. It cannot be contrary to law, morals, or public order because as we have noted, it is authorized by § 175 of the Civil Code. By the same token, it cannot be successfully alleged that the condition in the partition contract which conferred on Mario Mercado Riera the administration of the legacy to the minor Adrián V. Mercado Jiménez [5] is null and void.

 Since the condition imposed by all the heirs, among them Mario Mercado Riera, to the effect that the amount

---

[5] We must bear in mind that in the contract of partition no tutorship was conferred. It only granted the power to administer the legacy, since pursuant to § 172 tutorship is conferred: 1, by will; 2, by the law; and 3, by a competent court. Of course a tutor may not be appointed by contract.

donated to the said minor be administered by the ex-executor is valid, the heirs are all bound to comply with the condition stipulated and it may be set aside only with the consent of all the contracting parties.

For the reasons stated, the reconsideration sought is denied and the judgment which had been vacated is reestablished as of this date.