The issues presented by this appeal may be termed a continuation of those which were before the court in No. 5,768, in the Matter of the Estate of Elizabeth Woods Jennings,Deceased, in which the opinion, hereafter referred to as the first opinion, *Page 470 
was promulgated November 12, 1925. (74 Mont. 449, 241 P. 648.) The labors of court and counsel would have been simplified and minimized if the two appeals had been consolidated.
When the district court made its order of March 5, 1925, revoking the letters of the administrator, James G. Woods, it directed him "to file a full and true account of all his transactions and doings as such administrator since the date of his filing of his last original account and report of his administration of said estate." Pursuant thereto Mr. Woods, on March 14, rendered an account and report, purporting to cover his transactions as administrator from August 13, 1924, to and including March 6, 1925. Hearing thereupon was noticed for March 24. In due time Harvey L. Woods, a son and heir at law of the decedent, filed his objections and exceptions thereto. On April 7 the matter came on for hearing; the court then examined the account and report and heard testimony in support thereof. On April 16 Mr. Woods, former administrator, without notice to anyone, filed what he termed a "supplemental final account," in which he asked that two items, one for his own fees amounting to $890 and the other for his attorneys' fees in the sum of $250, be made a part of his account and report. This supplemental account was not noticed for hearing.
On May 12 the court made an order approving and allowing the account. In the order the administrator's compensation was fixed at $450 and he was allowed $150 "as attorneys' fees in addition to the $150 previously paid and allowed." Then followed: "It is further ordered that the said James G. Woods surrender into the possession of his successor the custody and care of all of the property of said estate remaining in his hands, including such livestock as he may now have in his custody, if any, and take from said successor a proper receipt showing such delivery." From this order Harvey L. Woods has appealed.
During the entire period covered by the report filed March 14, 1925, the administrator, as he had done before, continued to operate the farm as a going concern, and it must be held *Page 471 
in this opinion, as it was in the first, that in so doing he was conducting his personal and not the estate's business.
He is liable for the rents, issues and profits which the real estate should have yielded during that period of time (see first opinion); he is liable for the reasonable annual rentals, with interest, for the entire period of time from October 31, 1920, until March 5, 1925, or until he surrenders possession thereof to his successor.
But his counsel say at one place in their brief that "this report shows a profit resulting to the estate by reason of respondent having operated the same," and in another place it is asserted that for the entire period the administrator had operated the ranch, "the estate has profited in the amount of $1,480.16," hence it is argued the heirs must take the "profit" and may not insist upon the administrator's accounting for the annual rentals with interest. But this cannot be. In the first place, the $1,480.16 is a balance struck as a result of all the administrator's transactions. The background involves sales of property, with and without authority of court, purchase of property, cost of operation of the farm for a period of four and one-half years, payments of interest, — all without authority; neglect and mismanagement of the estate.
When the administrator, instead of winding up the estate, as he should have done, undertook to carry on the farm as a going concern, thus making the operation his personal business, he was and is bound to render to the heirs at least the reasonable rentals therefor, with interest from the time the rentals should have been paid; if the farm yielded profits in excess of the rentals, the heirs are entitled to the profits also, the trustee is not.
We need not state again the rules governing the administrator's responsibility with respect to real and personal property. They are set forth sufficiently in the original opinion, with supporting authorities. Nor need we consider any question of election by the heirs as between the value of the use of the property and the actual profits thereof; none such is presented here. We are not advised as to the reasonable rental *Page 472 
value of the decedent's farm; what is said in the first opinion, "It is clear to us that the reasonable rental value of a productive farm valued at $15,000 has not been received in any year," still seems applicable; but if the administrator did make the farm yield a profit above the rental value in 1920, he will simply have to account for that instead of going into his pocket to pay a loss.
In addition to accounting for the rents, issues and profits which the real estate should have yielded, the administrator must[1] account for all the personal property of the estate which at any time has come into his possession (24 C.J. 935), and his account must be so specific in character that the court may credit him with that for which he should be credited and debit him with that for which he should be debited; that which he cannot account for he must be charged with, and his account must set forth specifically the property still in his hands. Thus, upon his removal, the court may be able intelligently to specify the property which the old administrator must turn over to the new, as well as to fix the old administrator's liability to the estate. (24 C.J. 937, 1023.) The first account should show fully the property, — the resources, — of the estate, and its liabilities, if any; it should set forth "all matters necessary to show the condition of its affairs." (Sec. 10288, Rev. Codes 1921.) The final account of this administrator is far short of the foregoing requirements.
Upon the hearing the so-called final account, designated as[2] Exhibit No. 38, was offered, and over the objection of counsel for the objecting heir received in evidence. Upon what theory the court permitted the introduction of this document we are not apprised. It is like receiving a complaint as evidence in support of its allegations. A party cannot use his own pleading as affirmative evidence for himself. (Jones on Evidence, sec. 294; Hocking Valley Ry. Co. v. Helber, 91 Ohio, 231,110 N.E. 481; Green v. Morse, 57 Neb. 391, 73 Am. St. Rep. 518, 77 N.W. 925; Bell v. Throop, 140 Pa. St. 641, 21 A. 408.) *Page 473 
Being called upon to prove the correctness of his account, it was incumbent upon the administrator to do so by competent evidence.
In the account the administrator represents that the estate[3] owes James Jennings $1,732.55, Maggie Jennings, $605, two store accounts aggregating $22.84, himself, $30 "for ten days' haying and threshing at $3 per day," and $10 for a quarter of beef "furnished to Jennings." The estate does not owe any of these amounts; all were incurred by James G. Woods in his personal conduct of the estate's farm.
We shall not take the time to consider in detail the acts of the administrator in paying out sums of money ostensibly for the estate. What was said in the first opinion applies and need not be repeated except as to the following:
In September, 1924, the administrator paid out $36.45 for fire insurance "on the Jennings estate property, the house and granary, chicken-house, bunkhouse and machine shed." The propriety of this expenditure is challenged by the objecting heir. It is true that the record does not disclose whether there was any other fire insurance upon the property, or whether in view of all the facts this expenditure was necessary. Upon another hearing this matter may be inquired into, and the court may conclude the course of the administrator in this respect was altogether proper.
On December 8, 1924, the administrator paid the court reporter the sum of $59.85 "for transcript of evidence taken at the hearing on the report and account of James G. Woods as administrator." The item should have been disallowed. It was not a proper charge against the estate.
The action of the court fixing the administrator's and attorneys' fees upon his final account without notice is brought in question.
The Code provides for the compensation of an administrator. He[4] "shall be allowed all necessary expenses in the care, management, and settlement of the estate." (Sec. 10285, Rev. Codes 1921.) The word "necessary" is the keynote in that sentence. An administrator also is allowed commissions upon the amount of the estate accounted for by him, under the provisions *Page 474 
of section 10287; but these are not payable absolutely and in any event. Commissions are allowed an administrator for his care, trouble and responsibility in the management of the estate (Norris' Appeal, 71 Pa. 106); they are the reward of faithful stewardship (In re Allard's Guardianship, 49 Mont. 219,141 P. 661). The statute contemplates that the personal representative of the decedent shall do something more than wear with dignity the title of administrator; he is expected to earn his commissions by attending to the duties of his trust with fidelity and in accordance with the provisions of the law. Consequently, it has been stated that as a general rule the court has discretion to withhold commissions from an administrator who has not given proper attention to the duties of his office. (11 R.C.L. 229; In re Rutledge, 162 N.Y. 31, 47 L.R.A. 721,56 N.E. 511; Matter of Bushe, 227 N.Y. 85, 7 A.L.R. 1590, 124 N.E. 154;Norris' Appeal, supra; In re Thompson, 101 Cal. 349,35 P. 991, 36 P. 98, 508.)
A mere technical breach of duty which does not result in injury to the estate will not ordinarily justify a court in withholding compensation altogether, but a flagrant violation of the duties of the trust will do so. (In re Allard'sGuardianship, supra.) Willful neglect and mismanagement of an estate is sufficient to authorize the court in withholding the commissions or such part of them as in the exercise of its discretion it sees fit to withhold.
What we say here must not be regarded as intimating an opinion upon our part as to what should be done with respect to the administrator's compensation upon another hearing. The court, upon the new hearing, being apprised of all the facts and circumstances which have attended the management of this estate, will be enabled to do substantial justice to all concerned.
The foregoing is sufficient to demonstrate that, before the[5] court fixes the compensation of an administrator, persons interested in the estate should have notice so they may object if they desire to do so. (In re Sullivan's Estate, 36 Wn. 217,78 P. 945.) In authorizing the payment of money to an administrator the court is disbursing the money of the estate in which the heirs are interested. The same rule applies in fixing *Page 475 
fees. By the provisions of sections 9786 and 10285, Revised Codes of 1921, the court may fix and allow the compensation of attorneys representing an administrator for services rendered and order that the amount so fixed be set apart out of the funds of the estate, to be paid as a part of the necessary expense of administration. (In re McLure's Estate, 68 Mont. 556,220 P. 527.) The court has a wide discretion in fixing the fees which should be paid to attorneys for their services in estate matters — dependent upon the character and value of the services — but, of course, this discretion must be employed within the rules prescribed by law.
Where an administrator in rendering his account asks that his fees and those of his attorney be fixed, notice of the hearing of the account is sufficient to comprehend the subjects covered by the account; all will be deemed included in the notice. But in the instant case the court fixed the fees of the administrator and attorneys which were not included in the final account, without any notice to those interested in the estate. This was erroneous.
The court's order approving the administrator's so-called final account is disapproved. James G. Woods must be required by the district court to account fully and specifically in such a way as to show the true condition of the affairs of the estate throughout the period of his administration. Upon the hearing of that account, all of his acts and doings may be inquired into in accordance with the rules laid down in the first opinion and herein set forth, upon which the court may make appropriate orders as justice may require.
The order of May 12, 1925, is reversed for further proceedings in conformity with this opinion. The appellant shall recover his costs.
Reversed and remanded.
ASSOCIATE JUSTICES HOLLOWAY, GALEN and MATTHEWS concur.
MR. JUSTICE STARK, being disqualified, did not hear the argument and takes no part in the foregoing decision. *Page 476