[L. A. No. 19036.   In Bank.   Oct. 16, 1945.]

Estate of CHARLES H. ROBERTS, Deceased.   ETHEL E. STIEBEL et al., Appellants, v. ELIZABETH CLARE ROBERTS et al., Respondents.

Potter & Potter, Frank Rouse and Julius Patrosso for Appellants.

Chase, Barnes & Chase and Ransom W. Chase for Respondents.

TRAYNOR, J.—Charles H. Roberts died on August 11, 1933, leaving a holographic will containing the following bequest to his wife Elizabeth Clare Roberts: "After the payment of my just and lawful debts, I give, devise and bequeath to my wife, Elizabeth Clare Roberts, Two Hundred Dollars ($200.00) per month for her natural life out of the rents and receipts of my estate. This Two Hundred Dollars ($200.00) must be paid first, then the children get theirs." The will also gave a life interest in 5/12 of the estate to Oliver James Roberts and a life interest in 3/12 to Ethel E. Stiebel, children of a former marriage of the testator, with remainder in each case to the children of the life tenant. The remaining 4/12 of the estate was given to the children of two predeceased daughters of the testator. Elizabeth Clare Roberts, the testator's widow, and Ethel E. Stiebel, his daughter, were appointed executrices under the will. On October 10, 1934, the probate court set aside out of community property, as a probate homestead for the widow, a lot on which were located seven bungalows, six of them rented. The validity of this order was contested in a proceeding between the parties under sections 1080-1082 of the Probate Code to determine heirship. The judgment in that proceeding, which became final, held that the order setting aside the homestead was valid;

that 1/5 of the other property acquired by the testator was community property and that an undivided 1/10 interest in the property under administration was therefore the widow's share; that the remaining 4/5 of the property acquired by the testator was his separate property; that "Elizabeth Clare Roberts is entitled under the terms of the Last Will and Testament of . . . Charles H. Roberts, Deceased, to payment of the sum of Two Hundred Dollars ($200.00) a month for the rest of her natural life from the date of the death of said decedent, to wit, August 11, 1933, to be paid out of the net income received from nine-tenths (9/10) of the remaining estate or property of said decedent; that said payments of Two Hundred Dollars ($200.00) a month are a charge upon said net income and are to be paid prior and ahead of the payment of any income to any of the persons entitled to the corpus or principal of said estate, or to any interest therein; that said bequest of Two Hundred Dollars is a bequest of income."

The executrices filed a first account in 1934, which was settled. The amended second account and the third and final account were consolidated. In the same proceedings objections were raised to both accounts and the distribution of the estate was litigated. The probate court entered its decree of distribution and settlement of the accounts. Contestants appeal from this decree.

Appellants contend that the will reveals the testator's intention to dispose of all the property in which he had any interest, including the community property; that the widow was therefore put to an election to take her interest in the community property under the statute or to take under the will; and that by claiming a probate homestead in the community property, she elected to take her share in the community property under the statute and cannot take under the will. This question is not open on this appeal, however, for it was rendered res judicata by the final judgment in the proceeding between the parties to determine heirship. That judgment established the right of the widow to the probate homestead set aside for her as part of the community property and her right upon the distribution of the estate to receive her share in the community property in addition to her bequest under the will, and determined conclusively the issue now raised whether or not it was then expressly raised. (*Panos* v. *Great Western Packing Co.*, 21 Cal.2d 636, 638 [134 P.2d 242]; *Bernhard* v. *Bank of America*, 19 Cal.2d 807, 810 [122

P.2d 892]; *Hamilton* v. *Carpenter*, 15 Cal.2d 130, 133 [98 P.2d 1027]; *Seidell* v. *Anglo-California Trust Co.*, 55 Cal. App.2d 913, 918 [132 P.2d 12]; see 2 Freeman, Judgments (5th ed.) § 627.) ██ The issue was within the probate court's jurisdiction in that proceeding, for in a proceeding to determine heirship "any person . . . entitled to distribution of the estate or any part thereof" and "praying that the court determine who are entitled to distribution of the estate" (Prob. Code, § 1080) may obtain a decision binding on any other person interested in the estate as to how the estate shall be distributed. Section 1082 of the Probate Code provides that a decree in such a proceeding, if final, "shall be conclusive . . . during the remainder of the administration of the estate and upon any subsequent proceeding for distribution." (See *Estate of Horman*, 167 Cal. 473, 475 [140 P. 11]; *Colden* v. *Costello*, 50 Cal.App.2d 363, 371 [122 P.2d 959].) ██ The court's jurisdiction in a proceeding to determine heirship includes the power to adjudicate community property rights. (*Colden* v. *Costello, supra; Estate of Gold*, 170 Cal. 621, 623 [151 P. 12]; *In re Burdick*, 112 Cal. 387 [44 P. 734].) Neither the community property rights of the surviving spouse nor his interest in the estate and those of others could be determined if the court could not also determine whether the surviving spouse is put to an election, for only thus could it determine whether the estate to be distributed under the will included the whole community property or only the testator's share therein.

██ Appellants contend, however, that the question whether a surviving spouse is put to an election must be left open until the time of distribution. No such rule was pronounced in *Colden* v. *Costello, supra; Estate of McCarthy*, 127 Cal. App. 80, 85 [15 P.2d 223]; or *Estate of Dunphy*, 147 Cal. 95, 104 [81 P. 315], on which appellants rely. These cases hold simply that if a widow is put to an election, she need not decide until the estate is to be distributed whether she wishes to claim her share in the community property or the benefits provided for her in the will. If she reserves her decision, the court will make alternative provisions in the interim for the distribution of the estate. (*Estate of Dunphy, supra,* 104.) In the present case the court determined that the widow could claim both her share in the community property and the bequest left her under the will, and it was therefore unnecessary for the widow to make a choice.

■ The right of the widow to a share in the remainder interests after the life estates of the son and the daughter of the testator if the life tenants die without issue entitled to the remainder interests was likewise conclusively determined by the decree determining heirship.

■ Appellants contend that the widow has no right to the family allowance of $100 monthly granted her by an order of the probate court on the grounds that the bequest of $200 monthly from the date of the death of the testator was in lieu of a family allowance, and that in any event she was not entitled to a family allowance for a period longer than three years within which the estate would have been closed but for her allegedly improper conduct in delaying the administration of the estate. The merits of these contentions cannot be determined in the present proceeding, for the order of the probate court granting the family allowance was neither appealed from nor modified. The order was made before the inventory was filed and was therefore subject not only to appeal (Prob. Code, § 1240), but to modification by the court after the inventory was filed. (Prob. Code, § 681.) Having failed to take an appeal within the time prescribed or to petition for the modification of the order after the filing of the inventory, appellants cannot attack the order collaterally in the present proceeding. (*Estate of Nelson,* 167 Cal. 321, 324-325 [139 P. 692] ; *Estate of Monge,* 25 Cal.App.2d 235 [77 P.2d 290] ; *Estate of Brown,* 54 Cal.App.2d 575, 581 [129 P.2d 713, 130 P.2d 188] ; see 11A Cal.Jur. 542.)

■ Appellants question the right of the widow to any part of the executors' commissions upon the ground that she acted to the disadvantage of the estate. It is settled, however, that an executor does not lose his right to the statutory compensation because he is guilty of mismanagement of the estate. He "should be charged with losses resulting from his default or neglect, and allowed his commissions." (*Estate of Carver,* 123 Cal. 102, 105 [55 P. 770] ; *Estate of Goodrich,* 6 Cal.App. 730, 733 [93 P. 121] ; 3 Woerner, Administration (3d ed.) § 526.) The statutes in some states have established a different rule. (See 83 A.L.R. 726; Woerner, *ibid.*) ■ As to the division of the statutory compensation between the executrices "according to the services actually rendered by each" (Prob. Code, § 901), the probate court exercised its discretion, which cannot be disturbed on appeal in the absence of a showing that the court abused its power.

■ Recurrent payments were made to meet interest and

installments on a loan secured by a deed of trust on an apartment house, one of the assets of the estate. Appellants contend that the probate court should have charged amortization payments, as it charged interest payments, to income. They rely on the fact that under the will as well as under the statute, the payment of debts takes priority over the payment of bequests. One cannot conclude, however, that there is no income available for a bequest of income because there are debts outstanding. The loan is a charge on the corpus, and since amortization payments augment the value of the corpus, they are chargeable to corpus just as a full repayment of the loan would be.

While the lower court rightly refused to uphold the foregoing contentions, the judgment must be reversed because it erred in also refusing to uphold certain other contentions advanced by appellants.

It was held in the proceeding to determine heirship that the widow's bequest was one of income. Appellants contend that the probate court should have computed the income available to meet the widow's bequest on the basis of an annual accounting period, deducting the expenses of such a period from the gross income thereof. If on such a basis the resulting net income was less than the $2,400 required to meet the monthly payments, the deficiency could not be made up out of the net income of another accounting period. The probate court computed the net income as a whole for a period of 113 months, the period covered by the amended second account, and determined that the amount arrived at after certain deductions was the ''balance of the net income available for payment of said bequest.'' The widow's bequest, as one of income, was to be met by the net income of the estate. Unlike the recipient of an annuity (Prob. Code, § 161(3)) she was entitled to the periodic payments specified in the will only insofar as there was income to meet them. (*Estate of Brown,* 143 Cal. 450, 455 [77 P. 160]; *Estate of Bourn,* 25 Cal.App.2d 590, 599 [78 P.2d 193]; *Estate of Oliver,* 21 Cal.App.2d 106, 108 [68 P.2d 735]; see 2 Cal.Jur. 78; 2 Am.Jur. 824; 20 Words and Phrases, 465; 109 A.L.R. 717.) The amount of net income available depends on what period serves as the basis for computing the gross income and expenses. The testator may himself provide for the basis of computation. It is settled in this state that in absence of such a provision in a testamentary trust the income

shall be computed according to annual accounting periods and that deficiencies of one period shall not be made up out of the earnings of another. (*Estate of Platt,* 21 Cal.2d 343, 351 [131 P.2d 825].) ▉ The same rule should be applied in computing the net income of estates; otherwise the income of a beneficiary would depend on the time consumed in the administration of the estate, and a beneficiary might have an interest in prolonging the administration of the estate. The probate court, therefore, in the absence of any provision of the testator for another accounting period should have computed the net income on the basis of an annual accounting period and determined whether there was enough income in each period to meet the $200 monthly bequeathed to the widow. If upon a retrial of the case it should be determined that there was a deficiency in any of the accounting periods it cannot be made up out of the net income of any other period. (*Estate of Platt, supra.*)

▉ Appellants also attack the finding of the probate court: "That in order to pay expenses of administration, debts and other principal payments, it has been necessary for said executrices to use and apply the income receipts from said estate for such purposes. That the total amount of principal expenditures made have exceeded the total amount of principal receipts or sums available therefor as of November 17, 1943, by the sum of $11,528.70 which sum has been paid out of the net income receipts of said estate which would otherwise have been distributable to Elizabeth Clare Roberts. . . ." Under these circumstances, however, the income that was applied to expenses chargeable to corpus would not necessarily be distributable to the widow, for if upon computation of the annual net income, the income for any period exceeded the $2,400 required for the widow's bequest, the excess would be distributable to the other beneficiaries interested in the income.

Appellants contend that an amount withdrawn by the widow on her bequest during the period covered by the first amended account was not met by the income of that period. Respondents contend that this question is not open in the present proceeding, on the ground that the payment on the bequest was ascertainable from the account and the propriety thereof was conclusively determined by the final order settling the account. ▉ An order settling an account binds those interested in the estate to the propriety as well as to the occurrence of the receipts and disbursements listed. (*Estate of*

*Wear,* 20 Cal.2d 124, 127-128 [124 P.2d 12] ; *Security First Nat. Bank* v. *Superior Court,* 1 Cal.2d 749, 755 [37 P.2d 69] ; *Estate of Simonton,* 183 Cal. 53, 56 [190 P. 442] ; *Estate of Rider,* 199 Cal. 742, 746 [251 P. 805] ; *Estate of McDougald,* 146 Cal. 191, 195 [79 P. 878].)    The present case, however, involves, not a disbursement within the executor's powers, but a partial fulfillment of a bequest prior to a decree of partial or final distribution.   ''In making payments in anticipation of the decree of distribution, the administrator acts at his peril, and if . . . it turns out upon distribution that the payee is not entitled to receive any part of the [estate], the administrator must look for reimbursement to the person to whom the payment has been made.''   (*Estate of Ross,* 179 Cal. 358, 362 [182 P. 303].)   Since advances by the executor on a bequest are not properly a part of an account in absence of a decree of distribution, the probate court may exclude such items from an account and reserve them for consideration upon the distribution · of the estate.   (*Estate of Willey,* 140 Cal. 238, 241 [73 P. 998] ; see 11B Cal.Jur. 760.)

The probate court's approval of such an item as part of the account settled may· relieve the widow of personal liability as executrix to the other beneficiaries of the estate for the amount advanced (see 34 C.J.S. 411), but this case concerns, not such liability, but the interests of the beneficiaries in the estate, which can be determined only by a decree determining heirship or a decree of distribution.    In the absence of such a determination the trial court's previous settling of an account in which the payment was listed does not foreclose a decision in the present proceeding as to the amount of net income available in the accounting period in question to meet the widow's bequest.

Appellants question 'the probate court's determination that certain extraordinary expenses for the apartment house are chargeable to corpus.   The probate court found: ''That there has been expended . . . in addition to the ordinary replacements and repairs, the following sums, to wit: 1.  For a new roof . . . $220.00.  2.  For new coils on water heaters . . . $150.00.  3.  For painting and renovating Robert Arms Apts. $950.00.  4.  For new refrigerators $466.07. That each and all of said expenditures were of an unusual and extraordinary nature beyond the scope of ordinary operation and maintenance and which tended to increase the value of said apartment house,  That said expenditures are properly

chargeable to principal or corpus of the estate and said executrices are properly chargeable with the resulting increased value of said apartment house to the·extent of said expenditures.'' The expenses in question represented no additions to the house or furnishings but merely repairs and replacements. Whether these expenses were chargeable to the corpus or income of the estate depends largely on the condition of the property when the executrices received it. ''The cost of putting into tenantable repair premises which were not in such repair when received by the trustee, whether originally acquired by the trustee as part of the trust property at the time of the creation of the trust or subsequently acquired by him, is payable out of principal; but the cost of thereafter keeping the premises in repair is payable out of income.'' (Rest., Trusts, § 233, comment *i.*) The same rule of accounting for such expenses is applicable to estates.

In the present case, the evidence as to these expenses did not relate to the question whether the repairs and replacements in question were urgent when the estate was established. If they were, the expenditure for these extraordinary repairs and replacements are chargeable to corpus. If the property was in tenantable condition when the executrices took office, the expenses should be charged to income. The question then arises, however, how such extraordinary expenses, ultimately chargeable to income, should be charged when the benefits of the repairs and replacements are to extend over several accounting periods. ''It is a generally accepted principle of accounting that, where practicable, expenses and costs which are a charge against earnings of more than one period should be apportioned equitably to the specific periods which derive the benefit. . . . From the standpoint of good accounting practice, there is no option as to how items should be charged when the benefits therefrom clearly aid or are reasonably expected to aid subsequent periods.'' (Montgomery, Auditing (6th ed.), p. 246.) This principle is given specific application in the Restatement of Trusts, section 233, comment *l*: ''If the . . . probable life of the improvements is limited in duration, although the cost of the improvements is payable out of principal, the trustee is under a duty to the beneficiary entitled in remainder to amortize the cost of such improvements out of income, in accordance with such reasonable plan as he may adopt. . . . The result is that if the trust does not terminate before the end of the probable life of the

improvements, the whole cost of the improvements will be paid out of income. This is fair because the beneficiary entitled to the income gets the full benefit of the improvements and the remainderman gets no benefit. On the other hand, if the trust terminates prior to the end of the probable life of the improvements, the payments from income will cease on the termination of the trust. This is fair because the beneficiary entitled to the income has not received the full benefit from the improvements but the remainderman receives a part of the benefit.'' Under this rule the expenses in the present case would first be paid out of corpus, but the amounts allocable to each accounting period would be charged to the income of that period and refunded to corpus. If it appears that the usefulness of the repairs and replacements will continue after the termination of this estate, any amount still unrepaid to corpus should be repaid out of the income of the accounting periods of the testamentary trust to be created with the assets of the estate for as long as the benefit of the repairs and replacements continue.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.