326

IN RE ESTATE OF SAMUEL H. SMITH, DECEASED.

No. 11288.
Submitted February 27, 1967. Decided April 18, 1967.
426 P.2d 575.

Gene A. Picotte (argued), Helena, Charles A. Smith (appeared), Helena, for petitioner.

Tipp, Hoven & Brault, Raymond W. Brault (argued), Missoula, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by a removed administratrix from the orders removing her, setting her fees and the fees of her attorneys and from the order denying her consolidated motion which sought various matters. The hearing of this appeal was expedited in the following manner.

A petition was filed in this Court by one of the attorneys for the children heirs in the estate and newly appointed administratrix de bonis non asking this Court to expedite the appeal which had been made by the removed administratrix from the three mentioned orders under the provisions of Rule 3, M.R. App.Civ.P. Following an ex parte hearing, an order was issued by this Court on February 14, 1967, requiring the removed administratrix and her attorneys to appear and to show cause why they should not be required to comply fully with the orders of the district court from which they were appealing and to show cause why the appeal should not be expedited. On February 27, 1967, the matter was argued before this Court, and an order was made and entered which set forth the terms of a stipulation that was entered into between counsel for both parties. The order provided that the appeal would be deemed

submitted when the conditions of the stipulation were met, and such has been done.

The facts of this controversy are far from simple, and our recitation of the facts is not intended to be complete in minute detail. The relevant facts are these:

On April 12, 1964, Samuel H. Smith died at the age of 82. Mr. Smith was survived by his widow, Elsie E. Smith, and six adult children. The children were the product of a former marriage of Mr. Smith. The record reveals that if a strained relationship did not exist between the stepmother, Elsie E. Smith, and her adult stepchildren prior to Mr. Smith's death, such a strained relationship quickly developed after his death.

About one month after Mr. Smith's death a petition for probate of will was filed in the district court. Subsequent investigation determined that Mr. Smith had made a later will which revoked the one which had been filed for probate, and also that Mr. Smith had subsequently revoked the later will. Hence on June 24, 1964, letters of administration were issued to Elsie E. Smith (hereinafter referred to as Mrs. Smith or the administratrix).

The bulk of Mr. Smith's estate consisted of an unencumbered cattle ranch, a herd of cattle, and sundry ranch equipment. The debts which Mr. Smith owed at his death were less than $15,000.00, and this amount of debt is quite small in relation to the value of the estate. It was necessary to liquidate the real and personal property of the estate by sale in order to prepare for distribution.

The cattle ranch contained over 10,000 acres of land; and, when it was finally sold on November 8, 1965, its purchase price was $286,218.35. The purchasers of the ranch had to borrow the money to make the purchase. Before the attorneys representing the insurance company loaning the money would free the major portion of the purchase price (some $258,418.35) for delivery to the estate, they required certain minimum title requirements be met by the estate. In essence all that was re-

quired was that proper determination of heirship be made. On May 11, 1966, the insurance company's attorneys asked Raymond W. Brault, Esq., one of the attorneys for the administratrix, about the status of the title. Following this inquiry, during the summer of 1966, the administratrix made two attempts to determine heirship, but both of these attempts were defective. On September 22, 1966, the insurance company attorneys wrote a letter to Mr. Brault offering to conclude the determination of heirship themselves since they had assured the insurance company that there would be no delay in concluding the sale which had taken place nearly one year before. There is no indication in the record that Mr. Brault ever took advantage of this offer which undoubtedly would have allowed the insurance company to release the remaining portion of the purchase price.

Thus, from November 8, 1965, until the present time, a sum of nearly $260,000.00 has been unavailable to the estate simply because the administratrix did not comply with minimum requirements concerning the title to the cattle ranch. The explanations, if they can be called explanations, offered by the administratrix and her attorneys as to why such an unreasonable delay has taken place are unsatisfactory to this Court as they were to the district court. We will make further comment on this matter later in the opinion.

Four district court judges signed various papers and orders in this estate. However, only the last two judges to appear in the estate are of consequence in this proceeding. Thus, we will refer to them by name when such reference is necessary.

On July 4, 1964, the administratrix received an order of the district court authorizing her to continue the business of her deceased husband. The administratrix, even prior to her appointment as such, (we need not explain the various procedures) petitioned the district court at various times for permission to sell personal property.

In December, 1964, the children heirs employed a law firm

to look into the matter of their father's estate. On December 15, 1964, Henry Loble, Esq., one of the members of the firm employed by the children heirs, wrote a letter to Robert J. Brooks, Esq., an attorney for the administratrix, requesting a copy of the inventory of the estate. Of course, no inventory was available at that time since the first inventory was not filed until December 24, 1964, some three months later than required by Section 91-2201, R.C.M.1947, which requires the administratrix to file her inventory and appraisement within three months after her appointment. On April 9, 1965, an amended inventory and appraisement was filed. The accuracy and detail of this amended inventory and appraisement leave some things to be desired.

Mr. Loble wrote letters to Mr. Brooks on June 2, 14, and 29, 1965, seeking information concerning the progress of the estate. Finally, on July 29, 1965, Mr. Brooks answered.

On August 23, 1965, a petition for removal of administratrix was filed. The petitioner seeking removal of the administratrix was Lois Ann Smith Pyle, a daughter of the deceased. When this petition was filed, the petitioner, the other children heirs, and their attorneys were unaware that the administratrix had filed her first account on August 20, 1965, some fourteen months after she had been appointed administratrix. Section 91-3501 requires such accounting to be made not more than six months after appointment.

An order suspending the powers of the administratrix and citing her to appear was filed on August 23, 1965. The hearing was set for September 8, 1965, and at the hearing testimony was taken concerning the first accounting and report. At the close of the hearing, District Judge A. B. Martin admonished the administratrix in the following manner: "Now, you realize, Mrs. Smith, that you as an Administratrix are charged with what we call a trust, that is, you are holding this property in trust for all of the heirs as well as yourself, and the law imposes upon your diligence, and in the event you fail to be dili-

gent, that is, you are dilatory there are proceedings by which the Administratrix can be removed and the task turned over to someone else. Now, the Court is not saying that possibly you are at fault. I realize that you are not a business woman fully cognizant of all of the affairs of the business world, but you do have the obligation to see that your attorneys do it for you in any event. If it isn't the case, then you are going to be subject to removal; along with that they [the attorneys] would probably lose their employment. So it is to the interest of all of you that we move this thing along. It has dragged a little bit too long, and perhaps proper accounting hasn't been followed. Now, the Court is not going to revoke your Letters of Administration, it's going to permit you to continue, but that is on the condition from now on you exercise that diligence and that this work is done and done expeditiously, you understand? A. Yes, (by Mrs. Smith)."

Also, at the hearing a stipulation was entered into between counsel for the administratrix and for the children heirs concerning the sale of the remaining personal property of the estate and of the ranch. As previously noted, the sale of the ranch was completed, except for the important factor of delivery of the major portion of the purchase price, on November 8, 1965.

For a short time, it appeared as if the admonition of the district court had acquainted the administratrix and her attorneys of their duties as the sale of the personal property and the real property proceeded along at a good pace. Even creditors' claims were filed.

In respect to creditor's claims we note that the amount of the creditor's claim of the Powder River County Bank is for a sum larger than the amount approved by the administratrix. As an aside we remark that hereinafter before the termination of probate proceedings a legal and equitable adjustment will doubtless be required.

It was not until November 12, 1965, that the administratrix

made a deposit on the inheritance tax due the State of Montana. This deposit was not made until some nineteen months had passed since the death of Mr. Smith. Thus, the estate lost the benefits of the provisions of Section 91-4416, R.C.M. 1947, which allows a discount of 5 per cent if the taxes are paid within eighteen months from the accruing thereof.

By February 24, 1966, a deposit of $45,888.97 on the federal estate tax had been made, and an interest payment in the amount of $1,402.09 had been made to the federal government.

We have not referred to the many petitions dealing with the sale of personal property and the various returns to these sales which are included in this estate's file. From May, 1964 to April, 1965, there were at least seven separate sales of livestock.

On December 17, 1965, an order of settlement of account was approved by the district court. This order approved an amended first annual account and report which had been filed on September 27, 1965. Also an order extending the family allowance which the administratrix was receiving as widow of the deceased from shortly after his death was entered on December 17, 1965. These orders were obtained without notice to the attorneys for the children heirs.

Hence, on February 19, 1966, the children heirs' attorneys secured an order of the district court requiring the administratrix and her attorneys to give notice of proceedings in the estate matter to the attorneys for the children heirs. This rather unusual order was necessitated by the failure of the administratrix and her attorneys to give adequate notice to the children heirs' attorneys of routine estate matters.

On March 21, 1966, Judge Martin held a hearing on the administratrix's petition to fix her fees and the fees of her attorneys and the extra fees sought by the administratrix for her services rendered in connection with the management of the ranch. On June 7, 1966, a memorandum of facts and an order made by Judge Martin concerning the March 21st hearing was

filed. This memorandum and order traced the course the estate had taken and pointed out many discrepancies that existed in the various inventories and accounts that had been filed. It denied the extra compensation which the administratrix sought as ranch manager. It ordered a full and complete accounting of the administratrix's administration and directed her to employ a qualified accountant to audit her records and accounts and to otherwise assist in the preparation of the accounting. These unusual directives of the district court came some nine months after the administratrix and her attorneys had been admonished by the district court of the nature of the trust which is imposed upon the administratrix and her attorneys.

On July 20, 1966, a statement of cash receipts and disbursements from April 13, 1964 to May 2, 1966, prepared by Mr. Steve A. Cole, a certified public accountant, was filed in the district court. In the letter accompanying the statement, Mr. Cole noted that he had discovered errors in the Federal Income and Estate Tax returns required to be filed by the estate. He made the following comment: "It appears that to date all returns have been filed within extensions of time granted for filing and payment of tax, and that taxes were paid intentionally in the amount sufficient to assure that no more taxes or interest thereon would have to be paid. I estimate that a refund in excess of $10,000.00 will be receivable when all of the amended tax returns have been filed."

A hearing on the report prepared by Mr. Cole was held on August 2, 1966. Following that hearing, Judge Martin filed an order on September 23, 1966, approving audit and accounting, fixing attorney fees, administratrix fees and other allowable deductions. The order set the administratrix's fee at $5,000.00 and her attorneys' fees at $7,000.00. At long last it appeared that the estate had some semblance of order and that it could be brought to a close. However, this appearance was not correct.

For some reason not explained in the record, Robert J.

Brooks, Esq., withdrew as attorney for Mrs. Smith. Mr. Brault continued as Mrs. Smith's attorney.

The record indicates that Mr. Brault and the administratrix were dissatisfied with the amount of the fees approved by Judge Martin in his order of September 23, 1966. Thus, on October 17, 1966, Mr. Brault filed a motion to disqualify Judge Martin and quash certain orders which had been signed by Judge Martin during the course of the estate proceedings.

The basis of Mr. Brault's motion to disqualify Judge Martin and to quash certain of his orders stems from the following facts: As we noted previously, before this estate took on the character of an intestate proceeding, there was introduced one will into the district court and mention of another will appears in the record. It seems that Mrs. Mable Sinclair, one of the children heirs, consulted the law firm of Martin and Young concerning one of the wills. The heir talked not with Mr. A. B. Martin, the senior partner of the firm, but with Mr. Denzil Young. Mr. A. B. Martin was later appointed a district court judge and is the same Judge Martin we have been referring to during the course of this opinion. Judge Martin explained his understanding of the business dealing between Mr. Young and Mrs. Mable Sinclair in a letter of October 17, 1966, to Mr. Brault and to the attorneys representing the children heirs.

In this letter he noted that Mr. Young's only legal participation took the form of advice to Mrs. Sinclair and that he made no appearance in the estate proceedings. Judge Martin noted that "This estate first came to my attention sometime after I assumed the judgeship in June of 1965, at about which time Mr. Raymond Brault joined Mr. Brooks as attorney for the estate. Prior to this attempted disqualification, neither Mr. Brooks nor Mr. Brault have in any manner suggested that I may have had some connection with the estate prior to my assuming duties as District Judge." Judge Martin further noted that dissatisfaction with his order of September 23, 1966, should be expressed by the method of appeal rather than by a

disqualification which would simply set back the entire progress of the estate.

The attorneys for the children heirs resisted the motion to disqualify and to quash and on October 28, 1966, Judge Martin denied the motion.

The administratrix did not appeal from either the order of September 23, 1966, nor the order denying the motion to disqualify and to quash.

On October 31, 1966, Lois A. Pyle renewed her attempt to remove Mrs. Smith as administratrix and she filed a petition to that effect. On the same day the attorneys for the children heirs made a motion to vacate the order of the court concerning entitlement to attorneys' and administratix's fees. Judge Martin signed an order dated October 31, 1966, and filed November 4, 1966, suspending Mrs. Smith as administratrix and citing her to appear.

On November 21, 1966, Judge Martin disqualified himself, and Judge L. C. Gulbrandson accepted jurisdiction of the estate proceedings. On November 25, 1966, Mr. Brault filed a motion which dealt with the fees that had been set by Judge Martin in his order of September 23, 1966.

A hearing of all these matters was held before Judge Gulbrandson on December 2, 1966. After this hearing, Judge Gulbrandson entered two orders on December 20, 1966, and one order on January 20, 1967. The administratrix appealed from all three of these orders.

Judge Gulbrandson's orders of December 20, 1966, dealt with the removal of the administratrix and the appointment of Mrs. Pyle as administratrix de bonis non and with the fees to be paid to the administratrix and her attorneys and the administratrix de bonis non and her attorneys.

In his order removing Elsie E. Smith as administratrix of the estate of Samuel H. Smith, Judge Gulbrandson found that Elsie E. Smith had wasted and mismanaged the property of the estate committed to her charge and had wrongfully ne-

glected the estate and the duties required of.her by law in the following particulars: (a) that she had failed, refused and neglected to render, for the information of the court, an exhibit under oath, showing the amount of money received and expended by her, the amount of all claims presented against the estate, and the names of the claimants, and all other matters necessary to show the condition of its affairs, and that she had performed these duties only after being forced to do so in court proceedings instituted by the children heirs; (b) that she had refused to give information set forth in (a) above to the children heirs and their attorneys until forced to do so by formal proceedings and orders of the court; (c) that for many months she had failed and refused to make and to file a full account and report of her administration, as required by the laws of the State of Montana, and she did so fail and refuse until forced thereto by the order of court after long and costly proceedings instituted by the children heirs; (d) that by and through her acts and omissions and those of her attorneys, she delayed legal and tax proceedings in said estate, which resulted in loss and expense to the estate and the beneficiaries thereof, including failure to file tax returns on time; failure to follow proper legal procedures in determining heirship; failure to take steps to satisfy title requirements of the purchasers of the real property of the estate; and in general, delaying the expeditious progress and completion of the estate.

Judge Gulbrandson further ordered Elsie E. Smith to turn over and deliver to Lois A. Pyle "as administratrix of said estate, all money, property, goods, chattels and papers belonging to said estate, and (to) take and do all necessary steps and matters to accomplish the same, including the execution of such documents as shall be necessary to transfer moneys and bank accounts; and that these directions apply equally to the attorneys for said Elsie E. Smith; and that any violation of these directions shall constitute contempt of this court."

When we commenced our discussion we stated that the facts

in this controversy were far from simple, and we realize the foregoing recitation is far from complete, but it does in our opinion set forth the relevant facts. We further wish to declare that the setting forth of these facts is not be construed as an approval of the procedure followed in any instance since to reach our conclusions we are not called upon to determine what would have been proper procedures.

The relevant issues presented by this appeal are these:

1. Whether there was legal cause for the removal of Elsie E. Smith as administratrix.

2. Whether the fees set for the removed administratrix and her attorneys were proper and were within the discretion of the district court.

3. Whether the district court was correct in denying the consolidated motion.

With regard to the removal of Elsie E. Smith as administratrix of the estate, we think the facts as set forth and as summarized by Judge Gulbrandson in his order speak for themselves. Sections 91-2101 and 91-2102, R.C.M.1947, provide for the removal of an executor or administrator for waste and mismanagement and neglect of the estate. These sections were sections 7488 and 7489, R.C.M.1907, and this Court made the following comments on them in In Re Dolenty's Estate, 53 Mont. 33, 47, 48, 161 P. 524, 530: "Both of these cases refer to the restrictions put upon the power of the court in making the appointment *in limine*. They do not justify the conclusion, even remotely, that this court intended to imply, by anything said in either of them, that such an administrator or executor may with immunity adopt a course of conduct which is not only wasteful of the estate, but is wholly disregardful of the rights of its creditors. This would have been to nullify the power vested in the court by section 7488 and 7489: To call to strict account and suspend and, if necessary, to remove an administrator or executor who has been guilty of any of the delinquencies therein mentioned. It would be a monstrous doctrine to

say that after his appointment the administrator may despoil or waste the estate at his pleasure, leaving those entitled to it without the means of redress. Even without the provisions in these sections, it would seem to us that the power vested in the district court to conduct the administration of estates, implies also the power to compel the trusted appointee to collect and preserve the assets of the estate put in his charge and to effect a speedy distribution of them to those entitled to share in them."

With regard to the fees set for the removed administratrix and her attorneys we note that through their actions the major portion of the purchase money for the real property of the estate has been unavailable to the children heirs and to the administratrix herself as their rightful shares of the estate, and also it has not even been drawing any interest for the estate. Also, tax penalties have been assessed against the estate, and the State of Montana inheritance tax credit has been lost. Additional fees will be required to be paid to the administratrix de bonis non and to her attorneys. In view of all of these facts, we think that the fees set by Judge Gulbrandson's order are generous. The fee schedule set forth in section 91-3407 applies to fees that are to be allowed for the successful completion of an estate. It can hardly be said that a successful completion of the estate has been accomplished. Mrs. Smith and her attorneys have not shown any facts which would indicate that the fees allowed are not reasonable.

This Court made the following comment in In Re Jennings' Estate, 74 Mont. 468, 474, 241 P. 655, 657: "The statute contemplates that the personal representative of the decedent shall do something more than wear with dignity the title of administrator; he is expected to earn his commissions by attending to the duties of his trust with fidelity and in accordance with the provisions of the law. Consequently, it has been stated that as a general rule the court has discretion to withhold commis-

sions from an administrator who has not given proper attention to the duties of his office. * * *

"Willful neglect and mismanagement of an estate is sufficient to authorize the court in withholding the commissions or such part of them as in the exercise of its discretion it sees fit to withhold."

In regard to the denial of the consolidated motion, we are unable to find any merit in the removed administratrix's contention that the orders of Judge Gulbrandson would be any different if a new trial were granted or additional testimony taken.

The condition of the estate is summarized by the report of Mr. Cole, the order of Judge Martin filed September 23, 1966, and the orders of Judge Gulbrandson, dated December 20, 1966. We have carefully examined the other issues presented for review by the removed administratrix and find them all to be without merit.

We find no error in the district court orders appealed from and they are affirmed. The cause will be remanded to the district court for further proceedings that the estate may be expeditiously brought to completion. While we have found no merit to the contentions made on this appeal by the removed administratrix and her counsel, yet we recognize that the appeal was taken in good faith and that additional sums should be allowed counsel for prosecuting and defending the matter in this court. In our opinion the sum of $500 each should be allowed to counsel for the children heirs and for counsel for the removed administratrix; and the reasonable costs incurred by each party should be allowed when properly taxed in the district court.

Let remittitur issue forthwith.

MR. JUSTICES ADAIR, DOYLE, CASTLES and JOHN CONWAY HARRISON concur.