495 P.2d 873

**In the Matter of the ESTATE of Zerena M. SHATTUCK, Deceased.**

**Daniel E. MOORE, Appellant,**

**v.**

**Ann Shattuck JOHNSON, Appellee.**

**No. 2 CA–CIV 965.**

Court of Appeals of Arizona, Division 2.

April 12, 1972.

Rehearing Denied May 4, 1972.

Review Denied June 20, 1972.

Flynn, Kimerer, Thinnes & Galbraith, by John J. Flynn, and Tom Galbraith, Phoenix, Daniel E. Moore, Scottsdale, for appellant.

Claude Bates, Evansville, Ind., Paul G. Rees, Jr., Estes, Browning & Zlaket, by Donald L. Estes, Tucson, for appellee; Richard M. Davis, Tucson, of counsel.

KRUCKER, Chief Judge.

The appellant, individually rather than as executor of the estate of Zerena M. Shattuck, deceased, brings this appeal from an order of the probate court and presents the following questions for review:

"1. Where a trial court determined that an executor's administration of an estate has caused no loss to the estate and refuses to revoke the executor's letters testimentary [sic], can the court nevertheless authorize payment of only one-half of the executor's statutory compensation?

2. When the will of a testatrix creates a trust to be administered by an independent trustee, does the appointment of the personal advocate of the sole beneficiary thwart the intention of the will and destroy the

trust by a merger of its legal and equitable inetrest?

3. Did the trial court further err in computing the executor's fee by neglecting to consider, as its basis, the appraised value of the estate and the value of its receipts?"

The events leading up to entry of the subject order are as follows. The decedent's will named appellant as executor of her estate and on July 25, 1966, letters testamentary were issued to him. No bond was required as per the terms of the will. On August 26, 1969, appellee who is the primary beneficiary, filed a petition to revoke those letters, alleging that appellant had failed to file an inventory and appraisal within the statutory time, had continued the decedent's business without court authorization, and had failed to file within the statutory time a verified account showing receipts and disbursements.

On September 5, 1969, appellant filed an inventory and appraisement and a first and final account and petition for distribution. He stated therein that he had acted both as executor and attorney for the estate, that he was entitled to receive only one fee for his services and that he was electing to charge an attorney's fee rather than an executor's fee. He also stated that he had already paid to himself $30,616.31, the amount allowed by IRS as a deduction in computing the taxable estate for estate tax purposes. He requested the court to determine a final fee to be paid for his services.

Appellee filed objections to appellant's accounting on various grounds, including payment of attorney's fees and requested, *inter alia*, that appellant be surcharged for all funds unaccounted for.

Because of the confused status of appellant's account, the court directed that a master be appointed for the purpose of examining the records of the estate. The hearing on all pending motions and petitions was continued until the master's report was submitted to the court

The master's report, filed June 24, 1970, included certain comments "by way of general information." He stated therein that during the period July 7, 1966 to December 31, 1969 the executor drew or caused to have drawn substantial sums of money from the estate without prior approval but that by December 31, 1969, the final records indicated that some attempt was made to bring all accounts into some order. He pointed out that there was an "apparent shortage" of some $12,000.

After a lengthy hearing, the court entered the following order:

"This matter having come on before the Court for trial and all matters having been submitted to the Court for decision, and the Court being fully advised of premises, makes the following findings and rulings:

I

There has been mismanagement and gross neglect of the estate by DANIEL E. MOORE, as Executor and attorney for the estate;

II

The report of the master filed herein with the handwritten changes made by the Court is adopted by the Court as a final accounting;

III

Any shortages in the estate caused by the Executor have been repaid and no shortages now exist;

IV

"The Executor has received fees in the sum of $30,616.31. Although Mr. Moore performed the legal work for the estate, he would not be entitled to a separate fee for each. Therefore, the Court treats one-half of the sum as Executor's fee and one-half as attorney's fee. Because of the mismanagement and neglect, Mr. Moore is not entitled to an attorney's fee and he shall repay $15,308.15 to the estate within 30 days of the filing of the written order.

V

The estate shall pay the $640.34 accountant's bill of Robert W. Sill.

VI

The estate shall pay to Robert L. Bates a master's fee of $3,200.

VII

The estate shall pay the expenses of $12,541.54 listed in the Petition filed May 1, 1970.

VIII

Donald Estes is appointed Trustee under the Will and upon distribution of the remainder of the estate, a bond shall be set.

IX

The petition for delivery of a ring is denied."

▇ Initially, we summarily reject appellant's attack on the appointment of a trustee. Under the decedent's will, appellant was named trustee but declined to serve. The appointment of a successor trustee is not subject to attack by him since he lacks the requisite "aggrieved" status to entitle him to appellate review.

Appellant's main complaint concerns the amount of fees allowed to him. It is his position that, as executor of the decedent's estate, he was entitled to the compensation prescribed in A.R.S. § 14–662.[1] He

---

1. A.R.S. § 14–662:
"A. When compensation of the executor is provided by will but is renounced by the executor as provided by § 14–661, or if no compensation is provided, the executor shall be allowed commission on the amount of the whole estate accounted for by him, as follows:

"1. For the first thousand dollars, seven per cent.
2. For all above that amount and not exceeding ten thousand dollars, five per cent.
3. For all above that amount four per cent.

argues that since the word "shall" is used in the statute, the probate court had no discretion in the matter and was required to approve the statutory commission. In support of his position he cites cases from California which hold that a personal representative is entitled to his statutory compensation notwithstanding his mismanagement of the decedent's estate.[2] E. g., In re Fulmer's Estate, 203 Cal. 693, 265 P. 920 (1928); In re Roberts' Estate, 27 Cal. 2d 70, 162 P.2d 461 (1945); see also, 2 Bancroft's Probate Practice, 2d Ed. § 413.

Appellee, on the other hand, cites cases from other jurisdictions which recognize the court's power to depart from the statutorily-prescribed commission if there has been derelection of duty. E. g., In re Bundy's Estate, 121 Utah 299, 241 P.2d 462 (1952); In re Herman's Estate, 138 Neb. 430, 293 N.W. 353 (1940); Hooker v. Hoskyns, 388 P.2d 493 (Okl.1964); In re Jennings' Estate, 74 Mont. 468, 241 P. 655 (1925); see also, 34 C.J.S. Executors and Administrators § 876(a).

The rationale of the Montana case is particularly appealing:

> "Commissions are allowed an administrator for his care, trouble, and responsibility in the management of the estate . . .; they are the reward of faithful stewardship. . . . The statute contemplates that the personal representative of the decedent shall do something more than wear with dignity the title of administrator; he is expected to earn his commission by attending to the duties of his trust with fidelity and in accordance with the provisions of the law. Consequently, it has been stated that as a general rule the court has discretion to withhold commissions from an administrator who has not given proper attention to the duties of his office." 241 P. at 657.

Appellant contends, and we agree, that the courts of this State have consistently indicated that since our probate law is taken from California, we frequently follow the construction adopted by California courts. In re Estate of Pitt, 1 Ariz.App. 533, 405 P.2d 471 (1965); In re Nolan's Estate, 56 Ariz. 366, 108 P.2d 391 (1940). It is true that in California, mismanagement of the estate does not deprive a personal representative of his right to the statutory compensation—he is only charged with losses resulting from his default or neglect and such losses are set off against his commissions. In re Roberts' Estate, 27 Cal.2d 70, 162 P.2d 461 (1945).

■ In the case *sub judice* the court expressly found that no "shortages" existed. This does not mean, however, that appellant's mismanagement resulted in no "losses" to the estate. The need for reference to a master was occasioned by appellant's mismanagement and consequently the estate sustained a loss of $3,200, the amount of the master's fee. Furthermore, the estate was required to pay $12,541.54, as requested by the appellee in a petition filed May 1, 1970. The petition alleged that the expenses enumerated therein were necessarily incurred requiring the Executor to comply with the probate statutes." In granting appellee's petition, the lower court impliedly found that the appellant's conduct occasioned these expenses.

The total of these two items alone is $15,741.54, which is less than the sum deducted from appellant's fee. Furthermore, the record indicates numerous instances, some admitted by appellant, where he utilized estate funds and commingled them with his own. Had these monies been left on deposit, at the very least, standard bank interest would have been earned. Thus, there is no question but that additional losses to the estate resulted. Notwithstanding the trial court gave the wrong reason for reducing appellant's fee, we find the record justifies an offset for losses and we reject appellant's claim of error.

---

2. In the instant case, the probate court expressly found that appellant, as executor and attorney for the estate, was guilty of mismanagement and gross negligence.

The final question is directed to the appropriate value of the estate upon which the statutory commission was to be computed. Appellant, in his first and final account, stated that he was entitled to a fee in the amount of $32,353.00, "based upon the total value per the Inventory and Appraisement, plus Receipts. . . ." The inventory and appraisement, however, included assets which were not part of the probate estate and therefore did not qualify as a basis for computation. *See*, 2 Bancroft's Probate Practice 2d Ed. § 418. It also listed as an asset a debt which was barred by the statute of limitations. We find no error in the trial court's rejection of appellant's valuation.

Order affirmed.

HATHAWAY and HOWARD, JJ., concur.